1
2
3
4
5
6

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

7      UNITED STATES DISTRICT COURT FOR THE

8      NORTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17

ELENA LAUCHUNG-NACARINO, as an individual, on behalf of herself, the general public and those similarly situated,

        Plaintiff,

                v.

HOSTESS BRANDS, INC; and
HOSTESS BRANDS, LLC

        Defendants.

Case No. 3:20-cv-05971-SK

**PLAINTIFF'S OPPOSITION TO DEFENDANT MOTION TO DISMISS**

DATE:  February 22, 2021
TIME:   9:30 a.m.
CTRM:  C, 15th Floor

HONORABLE SALLIE KIM

18
19
20
21
22
23
24
25
26
27
28

Pl.'s Opp. to Defs.' Mot. to Dismiss

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

STATEMENT OF FACTS ...................................................................................................2

LEGAL STANDARD ..........................................................................................................4

ARGUMENT .......................................................................................................................4

I.     THIS COURT HAS SUBJECT MATTER JURISDICTION..............................................4

     A.     Plaintiff Alleges All Elements of Standing.................................................5

     B.     Defendants' Counter-Evidence Does Not Divest This Court of Jurisdiction. ..........5

          1.     The Offered 2019 Disclaimer Merely Creates Fact Issues. .........................5

          2.     The "Jurisdictional" Arguments Are Intertwined With the Merits..............7

     C.     Future Harm Is Sufficiently Alleged to Seek an Injunction...................................10

II.     DEFENDANTS' 12(B)(6) CONTENTIONS ARE MERITLESS. ...................................11

     A.     The "Economic Loss" Doctrine Does Not Apply. ...............................................11

     B.     Grouping the Two Defendants as "Hostess" Is Not Improper...............................13

     C.     Defendants' Rule 9(b) Arguments Merely Identify Various Arguments on the Merits, Not a Failure in Pleading. ...................................................................15

III.     PLAINTIFF REQUESTS LEAVE TO AMEND, IF NECESSARY................................17

CONCLUSION ..................................................................................................................18

-I-

Pl.'s Opp. to Defs.' Mot. to Dismiss

# TABLE OF AUTHORITIES

## **Cases**

*Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897 (N.D. Cal. Sep. 25, 2013) ...................................................................................................................12

*Arabian v. Organic Candy Factory*, 2018 U.S. Dist. LEXIS 45833 (C.D. Cal. Mar. 19, 2018) ...................................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................4

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................4

*Bly-Magee v. California*, 236 F.3d 1014 (9th Cir. 2001)..............................................12

*Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082 (9th Cir. 2014) ...............4

*Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020) ...............15

*Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075 (E.D. Cal. 2010)...................................5

*Coto Settlement v. Eisenberg*, 593 F.3d 1031 (9th Cir. 2010) .......................................6

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)...........................5, 10

*DeCarlo v. Costco Wholesale Corp.*, 733 F. App'x 398 (9th Cir. 2018)........................4

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)......................................17

*Falco v. Nissan N. Am., Inc.*, 2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct. 10, 2013) ...........................................................................................................................9

*Garcia v. GM Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 208129 (E.D. Cal. Dec. 10, 2018) .........................................................................................................................12

*Grasshopper House., LLC v. Clean & Sober Media, LLC*, 2018 U.S. Dist. LEXIS 228190 (C.D. Cal. July 18, 2018) .........................................................................14

*Haddock v. Countrywide Bank, NA*, 2015 U.S. Dist. LEXIS 146291 (C.D. Cal. Oct. 27, 2015).............................................................................................................13

*Hammond v. BMW of N. Am., LLC*, 2019 U.S. Dist. LEXIS 113903 (C.D. Cal. June 26, 2019) ........................................................................................................12

*Hanson v. Welch Foods Inc.*, 2020 U.S. Dist. LEXIS 118079 (N.D. Cal. July 6, 2020) ....................................................................................................................5, 10

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) .........................................4, 10

*HRPT Props. Tr. v. Lingle*, 676 F. Supp. 2d 1036 (D. Haw. 2009) ............................................4

*In re Ford Motor Co.*, 2020 U.S. Dist. LEXIS 163431 (C.D. Cal. Sep. 2, 2020) ......................12

*In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 145437
    (D.N.J. Oct. 6, 2014) ............................................................................................................5

*Kasky v. Nike, Inc.*, 45 P.3d 243 (Cal. 2002) .............................................................................8

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) ....................................................5

*Maxwell v. Unilever United States, Inc.*, 2018 U.S. Dist. LEXIS 54222 (N.D. Cal.
    Mar. 29, 2018) ......................................................................................................................9

*Morgan v. Wallaby Yogurt Co.*, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013) ..........................7

*Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115 (C.D. Cal. 2020) ........................12

*Ogden v. Bumble Bee Foods, LLC*, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2,
    2014) ....................................................................................................................................9

*Prescott v. Reckitt Benckiser LLC*, 2020 U.S. Dist. LEXIS 227278 (N.D. Cal. Dec.
    3, 2020) ..............................................................................................................................13

*Rattagan v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 150342 (N.D. Cal. Aug. 19,
    2020) ..................................................................................................................................12

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ...............................................7, 14

*Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004) ................................11, 12

*Rosales v. United States*, 824 F.2d 799 (9th Cir. 1987) ............................................................6

*Safe Air For Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ..............................................4

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ................17

*Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) ..................................................9

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012) ........................4

*Truxel v. Gen. Mills Sales, Inc.*, 2019 U.S. Dist. LEXIS 144871 (N.D. Cal. Aug.
    13, 2019) ........................................................................................................................7, 15

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163
    (C.D. Cal. 2009) ................................................................................................................11

*United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667 (9th Cir. 2018) ........................13

*United States v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016) ..........................13

*Victor v. R.C. Bigelow, Inc.*, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14,

Pl.'s Opp. to Defs.' Mot. to Dismiss

2014) .................................................................................................................. 9

*Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877 (C.D. Cal. 2013) ....................................... 7

*Vizcarra v. Unilever United States, Inc.*, 2020 U.S. Dist. LEXIS 125649 (N.D. Cal.
July 16, 2020) ..................................................................................................... 10

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ..................................... 7, 15, 16

*Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ......................................... 7, 15

## <u>Other Authorities</u>

Merriam-Webster Online, "Carrot Cake," *available at* https://www.merriam-
webster.com/dictionary/carrot%20cake ................................................................. 15

Pl.'s Opp. to Defs.' Mot. to Dismiss

## I.    INTRODUCTION

This is a straightforward case of deceptive labeling in which Hostess Brands, Inc., and Hostess Brands, LLC (collectively, "Defendants" or "Hostess") dupe consumers into believing one of their "donnettes" products is carrot cake when, in fact, it contains no carrot at all. The fact they knowingly misled consumers, and will continue to do so if not stopped, is evident since this is not the first time. Hostess was sued in 2016, in this same District, for a similar deception regarding a "maple" glazed variety of donut. *See generally VanCleave v. Hostess Brands, LLC*, No. 1:16-cv-02779 (N.D. Cal. May 23, 2016). With some tweaks that Defendants hope will provide them refuge this time around (e.g., not including a picture of carrots on the front packaging), they seek dismissal. None of their arguments withstand scrutiny.

First, their Rule 12(b)(1) challenge to standing—that Plaintiff cannot show reliance under the consumer protection laws—lacks merit. Plaintiff plainly alleges she "relied" on the packaging to make a purchase. *See* Dkt.#1 (Compl.) ¶¶ 66, 77. Nothing else is required. Defendants counter with external evidence: i.e., that they provided a disclaimer in 2019 alone. *See* Dkt.#23 (MTD) at 2. Since it is outside the pleadings, it cannot support dismissal. Even considering it, at best, it raises a fact dispute on a potential defense to one part of this putative class action, especially since Defendants admit *no disclaimer* appeared in 2020. *Id.* at 3. In any event, the evidence is not properly considered at this time though because it begs the very question at issue in this case, i.e., whether a consumer would understand the words of disclaimer to mean what Defendants admit: there is no carrot in "CARROT CAKE MINI DONUTS." It raises no jurisdictional defect.

Defendants then repackage these arguments to say Plaintiffs fails Rule 9(b). In doing so, they overlook well-established caselaw holding that Plaintiff has adequately pled this false advertising case with "particularity." The further arguments regarding a supposed failure to plead a misrepresentation or omission cause of action is an even bigger waste of ink. The Complaint provides detailed allegations for how a "reasonable consumer" is misled by the phrase "carrot cake" into believing Defendants' product would actually contain carrot. Whether or not Defendants find those reasons convincing is meaningless; it is for a jury to decide whether a reasonable consumer would be deceived in the circumstances. Moreover, aside from being

-1-

Pl.'s Opp. to Defs.' Mot. to Dismiss

1   deceptive, the conduct is undeniably unlawful, an issue that Defendants entirely gloss over.

2      Defendants also argue that the pleadings fail to give them notice of "who" deceived

3   consumers because the Complaint refers to both of them, which is absurd. The answer is simple:

4   both. While a collective pleading may be improper for unaffiliated defendants engaging in

5   distinctly different conduct, it is frivolous here where there are two virtually identical "Hostess"

6   entities engaged in a common enterprise.

7      Narrowing their remaining arguments to limited causes and relief, Defendants suggest that

8   the "economic loss" rule bars a common law fraud claim. This too is, at best, a distraction. This is

9   not a contract case; it is one for false advertising, deception, and fraud. The doctrine has no

10  application to circumstances like this involving the inducement into a purchase.

11     Defendants finally argue that Plaintiff lacks standing to seek an injunction because she is

12  now aware of the hijinks with "CARROT CAKE MINI DONUTS." The reality, however, is no one

13  (Plaintiff, the class, or general public) is going to stop purchasing food products and there is no

14  assurance Plaintiff will not be duped again by tweaks to this label or others by Defendants, which

15  she plainly alleges desiring to purchase in the future. As evident from Defendants' "maple glaze"

16  ruse, deception is a continuing process for these Defendants. Plaintiff has standing to seek all

17  relief sought. For all the foregoing reasons and those addressed in more detail below, Defendants'

18  motion to dismiss should be denied in full.

19  **II.   STATEMENT OF FACTS**

20     Defendants are affiliates co-located in Kansas City, Missouri, who manufacture,

21  distribute, market, advertise, and sell dessert products throughout the United States under the

22  brand name "Hostess," with the particular "donnettes" brand at issue boldly stating on its

23  packaging that it contains "Carrot CAKE MINI DONUTS." Dkt.# 1, Compl. ¶¶ 9-10, 30-33. In truth,

24  the donuts are scientifically engineered only to look, smell, and taste like real carrot cake. *Id.* ¶¶

25  34-38, 52-53, 60. No actual carrot is present in the product at all. *Id.* ¶ 37.

26     Defendants' deception is effective. Ordinary consumers reasonably understand the term

27  "Carrot Cake" to be a product containing substantial amounts of real carrot with all that

28  vegetable's associated health benefits. *Id.* ¶¶ 22, 25, 39, 43-45, 50-51. One obvious reason for that

-2-

Pl.'s Opp. to Defs.' Mot. to Dismiss

is noted in detail by the Complaint: virtually every recipe on Google (a repository of much human knowledge at this point) reflects the use of substantial amounts of real carrot and, correspondingly, less added sugar. *Id.* ¶ 22-25. Evidence to be obtained in discovery and public records identified in the Complaint further demonstrate that Defendants are both aware of and knowingly seek to exploit that common understanding of the term "Carrot Cake" by failing to clearly disclose on the front of their "CARROT CAKE MINI DONUTS" packaging that there is no carrot in the product. *See id.* ¶¶ 31-32, 36, 40-47. Plaintiff alleges Defendants do so in order to sell at a higher profit than if they had to use real carrot or state otherwise on the label, allowing Defendants to extract a "price premium." *Id.* ¶¶ 48-51.

Plaintiff Elena Lauchung-Nacarino is a consumer residing in California who was deceived into buying Defendants' carrot cake donuts, and she seeks to represent a class of others similarly situated. *Id.* ¶¶ 6, 7, 65-79. She specifically alleges *relying* on the packaging's statement of "CARROT CAKE" in making her choice to buy and that she would not have otherwise bought or at least paid less. *Id.* ¶¶ 65-71. She further alleges that all consumers who purchased would be reasonable in having the same reliance and, therefore, suffering the same injury. *Id.* ¶¶ 77.

On August 25, 2020, Plaintiff commenced this putative class action, alleging four causes of action: (i) violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, et seq.; (ii) false advertising under Business & Professions Code § 17500 et seq. ("FAL"); (iii) common law fraud, deceit, and/or misrepresentation; and (iv) unlawful, unfair, and fraudulent trade practices in violation of Business & Professions Code § 17200 et seq. ("UCL"). Dkt.# 1 (Compl.) ¶¶ 81-121. Plaintiff seeks certification of the proposed class of all persons who, between August 25, 2016 and the present, purchased Defendants' product in California (*Id.* ¶¶ 73, 100, 121); declaratory and injunctive relief; compensatory, statutory, and/or punitive damages; restitution; pre- and post-judgment interest; attorneys' fees and costs; and all other relief available at law or in equity. *See generally id.* at 29-31 (Prayer).

-3-

Pl.'s Opp. to Defs.' Mot. to Dismiss

1   **III.    ARGUMENT**

2         **A.  LEGAL STANDARD**

3         Defendants lodge both Rule 12(b)(1) and 12(b)(6) challenges. The standard of review for

4   a 12(b)(1) motion depends on whether it is a "facial" or "factual" attack on jurisdiction. A factual

5   attack challenges the truth of jurisdictional allegations by controverting evidence. *Safe Air For*

6   *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)*.* In that instance, a court has broad

7   discretion to permit discovery, *see Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082,

8   1088 (9th Cir. 2014); *HRPT Props. Tr. v. Lingle*, 676 F. Supp. 2d 1036, 1041 (D. Haw. 2009),

9   and must wait until trial if the issue is intertwined with the merits. *See Safe Air*, 373 F.3d at 1039.

10        To survive a Rule 12(b)(6) challenge, a plaintiff's complaint need only contain "enough

11  facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550

12  U.S. 544, 570 (2007). A claim is plausible when it "allows the court to draw the reasonable

13  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

14  678 (2009). In evaluating plausibility, "the court must presume all factual allegations are true and

15  draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F.

16  Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

17        **B.  THIS COURT HAS SUBJECT MATTER JURISDICTION.**

18        Defendants initially provide a legal standard for Article III standing, *see* Dkt.# 23 (MTD)

19  at 4, but then argue only that Plaintiff lacks statutory standing under California's consumer

20  protection due to a purported lack of reliance. *Id.* at 5-7. Defendants are wrong on either count.

21  Plaintiff has both Article III standing, and standing to bring CLRA, UCL, or FAL claims, if she

22  lost "money or property" as a result of Defendants' misconduct, which she sufficiently pleaded by

23  alleging she purchased the products at a price higher than she would have absent the deceptive

24  advertising. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103-04 (9th Cir. 2013); *see also id.* at

25  1104 n.4 ("At the pleading stage, of course, allegations of economic injury suffice."); *DeCarlo v.*

26  *Costco Wholesale Corp.*, 733 F. App'x 398, 399 (9th Cir. 2018) (finding both constitutional and

27  statutory standing met by such pleading). She need not allege exact prices either, as that only goes

28  to the amount of damages. *See Hinojos*, 718 F.3d at 1105; *see also Hanson v. Welch Foods Inc.*,

2020 U.S. Dist. LEXIS 118079, at *18 (N.D. Cal. July 6, 2020) ("Hanson also need not, at the pleading stage, provide a detailed economic model of how Welch's advertising increased the price of the product. His allegations that it did so are sufficiently plausible to survive a motion to dismiss.").[1]

She sufficiently alleged causation by pleading that she would not have bought a product but for the alleged deception on the label. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (citing *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011). Nothing more for standing is required to allow this Court to hear the suit.

### 1.      Plaintiff Alleges All Elements of Standing.

In the Complaint, Plaintiff alleges she is a consumer who purchased the product at issue based on the packaging stating "CARROT CAKE," which she reasonably believed meant the product contained real carrots. *See* Dkt.# 1 (Compl.) ¶ 65. Further, she pleads that had she known it contained no carrot or carrot cake, she would not have purchased (or at least paid less). *Id.* ¶ 66; *see also id.* ¶¶ 67-71 (elaborating further). Plaintiff has pled all that is required under California and Ninth Circuit law to have standing.

### 2.      Defendants' Counter-Evidence Does Not Divest This Court of Jurisdiction.

#### a.      The Offered 2019 Disclaimer Merely Creates Fact Issues.

Defendants' MTD offers a declaration from their counsel at Shook, Hardy & Bacon L.L.P. attesting to images of what are claimed to be "*the* 2019 label" and "*the* 2020 label."[2] *See* Dkt.# 23-1 (emphasis added), 23-2, 23-3. Defendants then presume that this evidence conclusively

---

[1] The MTD suggests at one point that exact prices must be pled based on a dated District of New Jersey case, *In re Gerber Probiotic Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 145437 (D.N.J. Oct. 6, 2014). *See* MTD at 10-11. *Gerber* involved the New Jersey Consumer Fraud Act, which requires quantifying an ascertainable loss, *id.* at *16-21. It is contrary to Ninth Circuit and California law.

[2] Defendants have not requested that this Court take judicial of these purported facts. Nor could they because they are subject to dispute. *See, e.g.,* Federal Rule of Evidence 201 (permitting a court "to notice an adjudicative fact if it 'not subject to reasonable dispute.' A fact is 'not subject to reasonable dispute if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'")

1  establishes that (i) Plaintiff's purchases in 2019 must have included the thin-printed "NATURALLY

2  AND ARTIFICIALLY FLAVORED" words from Dkt.# 23-2's label version and (ii) she was thereby on

3  notice that the 2020 product had no carrot. There are multiple problems with this.

4      First, it is not appropriate to offer such evidence on a motion to dismiss. Although

5  Defendants argue that a court may consider matters "incorporated by reference" in the Complaint,

6  Plaintiff's complaint does not incorporate these labels by reference. S*ee Coto Settlement v.*

7  *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (incorporation by reference applies only if the

8  Complaint "necessarily relies" on the materials and there are no fact disputes). Plaintiff alleges

9  her first purchase in 2019 and most thereafter were of a small six-pack with transparent film, *see*

10 Dkt.# (Compl.) ¶¶ 65, 67 and ¶ 32 (image), while later also buying an "On the Go" version. *Id.* ¶

11 67 and ¶ 31 (image). As readily seen in comparing the images at Dkt#. 23-2 and 23-3 to those at

12 Paragraphs 31-32 of the Complaint, these are not the labels of the product she alleges she

13 purchased. It also renders non-credible Defendants' counsel's testimony that Dkt.# 23-2 and -3

14 are *the* only labels in 2019-2020. There are clearly different types. What they were and where and

15 when they were in the market will be a disputed issue.

16     Second, although Defendants attempt to argue that a court may consider the declaration

17 for purposes of an attack on jurisdiction, *see* Dkt.# 23 (MTD) at 4, that is not true if the issue is

18 intertwined with the merits. *See Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

19 Here, the evidence is disputed, and, as shown below, it is tied up with the merits because what the

20 product label says in a false labeling case is central issue. More fundamentally, even if this Court

21 were to assume all of Defendants' purported facts, it would still not require dismissal because

22 Plaintiff was undeniably still deceived by Defendants' 2020 packaging. And, importantly, that

23 packaging was still unlawful—and thereby actionable under California's UCL.

24     Third, the Declaration is not really evidence. Counsel fails to state how he has personal

25 knowledge about the entirety of Defendants' product labels to make him competent to testify to

26 the facts stated therein[3] and, as noted above, there are serious concerns with what he has

---

[3] To be worthy of consideration, a declaration must state facts as opposed to conclusions that

28 permit at least an inference of personal knowledge. Merely being an attorney of record does not

presented. And, in any case, a bevy of questions naturally follow from the exhibits, including: what are the production dates for the labels; when did products ship with these label and to where; how long did those products stay on shelves at retailers; what other labels were used from 2016-present; to which specific varieties of packaging did they apply; and many others that will arise in the course of written discovery, document production, and cross-examination by deposition.

### b. The "Jurisdictional" Arguments Are Intertwined With the Merits.

After offering evidence and allegation as to a "2019 label" disclaimer, the MTD makes what are nothing more than arguments about disputed fact issues in the guise of a jurisdictional inquiry, perhaps in hopes their defenses will be ruled upon early.

For example, the MTD notably proclaims (incorrectly) that Plaintiff "does not allege that anything on the front of the package has, at any time, been inconsistent with the statement of ingredients." Dkt.# 1 (MTD) at 6. That clashes with the core point of the entire Complaint. Plaintiff repeatedly alleges that the "CARROT CAKE" representation on front contradicts the ingredient list on back since reasonable consumers understand (and expect) that representation in particular to mean Defendants' product contains carrot (it even has orange chunks in it) and, as such, is also healthier than comparable desserts. *See, e.g.*, Dkt.# 1 (Compl.) ¶ 37. That would be so regardless of any 2019 disclaimer since both parties agree carrot is not in the product at all. *See* Dkt.# 23 (MTD) at 9 (stating ingredient list is "accurate"). Defendants' argument that it is not a "reasonable assumption" to believe carrot cake is healthier than comparable desserts, *see* MTD at 6, is yet another factual dispute on the merits; not a standing issue. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) ("… the reasonable consumer standard, unlike the individual reliance requirement described above, is not a standing requirement.'") (citation omitted). In any event, Defendants' first point is wrong and they cite no law to support a jurisdictional dismissal.[4]

---

satisfy that requirement for anything but events occurring in the litigation itself. *See Clark v. Cty. of Tulare*, 755 F. Supp. 2d 1075, 1084 (E.D. Cal. 2010).

[4] Defendants cite a number of Rule 12(b)(6) cases in this portion of their brief, *see* Dkt.# 23 (MTD) at 5-7; all of which are meaningless for a *jurisdictional* challenge. Regardless, the cases

-7-

Pl.'s Opp. to Defs.' Mot. to Dismiss

Next, Defendants suggest that the "NATURALLY AND ARTIFICIALLY FLAVORED" language it claims to be on certain labels in 2019 somehow make the "Carrot Cake" representation true or non-misleading as a matter of law, and that Plaintiff must have seen the disclaimer, and/or that it must not have been "material" to Plaintiff whether the product contained carrot. *See* MTD at 7. This logic is misguided for at least three reasons: (1) Plaintiff disputes that the packages she purchased in 2019 necessarily had a disclaimer; (2) even then, it is not possible to determine as a matter of jurisdiction (or law) that the offered disclaimer dispels all deception to a future label without the same disclosure; and (3) materiality is a fact issue for the merits; not an element of standing.

As noted, the evidence Defendants' attorney offered does not conclusively establish Plaintiff's purchases in 2019 necessarily included a disclaimer (with no dispute those in 2020 *did not*). She does not plead seeing a disclaimer on what she purchased, alleges buying a small 6-pack variety, and the details concerning counsel's declaration of "the 2019 label" is disputed and requires discovery. Regardless, even if it turns out that what Plaintiff purchased in 2019 had the "artificially flavored" statement printed on it, it does not mean there can be no violation when the

---

are all easily distinguished. The footnote cited by the MTD from *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013), was dicta in that court's discussion and irrelevant here otherwise. The main issue in *Viggiano* focused on use of an "all natural flavors" statement on the label and preemption by specialized FDA regulations. *Id.* at 886-92. Here, the issue is whether a common term "CARROT CAKE" is used misleadingly and the label unlawful. The FDA does not regulate—nor do Defendants suggest it does—such common language. Next, *Truxel v. Gen. Mills Sales, Inc.*, 2019 U.S. Dist. LEXIS 144871 (N.D. Cal. Aug. 13, 2019), involved what was deemed "puffery" on the front of cereal boxes alleged to be actionable due to high sugar content – in essence, that the defendant should have "warned" its products contained an unhealthy amount of sugar. *Id.* at *12. That is not at issue here either. There is no claim of labeling (front or back) misrepresenting sugar content; only that consumers reasonably understand "carrot cake" to mean less sugar *compared* to other desserts. Thus, *Truxel* and *Clark v. Perfect Bar* (which *Truxel* is based on) are beside the point. *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015), is then improvidently misquoted to suggest there can be no deception if an ingredient list on back is accurate. That is not true (*see Williams* discussed, *infra*, at p. 15) and the *Workman* opinion involved oversized pictures on front of a few ingredients on back. The issue here is a statement of "CARROT CAKE" on front when there indisputably is *no* carrot in the product. Finally, *Morgan v. Wallaby Yogurt Co.*, 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013), involved an item in an ingredient list (evaporated cane juice) alleged to be falsely misrepresented. That is not relevant here.

same disclosure is admittedly excluded the following year. First, the consumer protection laws do not require literal falsity; only that a reasonable consumer is "likely to be deceived," which can occur even with a technically true statement. *See Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (laws prohibit "not only advertising which is false, but also advertising which, although *true*, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (emphasis added). If a disclaimer in the thin lettering presented by Dkt.# 23-1 was on the type of 6-pack donuts found at Paragraph 32 of the Complaint that Plaintiff first bought in 2019, the words would be quite small. Contrast that with the prominent "CARROT CAKE" combined with donuts visible through transparent film engineered to appear as if made from real carrot cake with orange bits in the mix, and it is more than plausible that Plaintiff missed the disclosure and could continue to be misled into making other purchases thereafter (no matter packaging type) into 2020 when Defendants concede <u>no</u> disclaimer was on the package. Nothing in the Complaint or disputed fact evidence is inconsistent with Plaintiff being deceived in both 2019-2020. Alternatively, had Plaintiff remembered seeing the disclosure in 2019, of which there is no evidence, she could have reasonably thought the Product changed in 2020.

Furthermore, it is far from apparent what the standalone floating "NATURALLY AND ARTIFICIALLY FLAVORED" words would mean to a reasonable consumer in these circumstances, or that it would necessarily cure the reasonable belief that "Carrot Cake" contains carrots. The terms have distinctly different functions under FDA regulations and it is not clear which of the following would be naturally or artificially flavored: the *carrot* component, other components making up *cake*, or those further constituting a *donut*. Neither does the ingredient list on the back clarify anything since it too uses only a standalone "natural and artificial flavor" statement (i.e., it does not reference what is flavored). *See* Dkt.# 23 (MTD) at 3. That can be contrasted with, for example: (a) the Oreo packaging shown in the Complaint that prominently says on the front label that it is a "CARROT CAKE *FLAVORED* COOKIE WITH CREAM CHEESE FROSTING," Compl. ¶ 27 (emphasis added), or, better yet, (b) the Betty Crocker cake mix disclosing "IMITATION CARROT *FLAVORED* PIECES." *Id.* ¶ 28 (emphasis added). The court must draw all reasonable inferences in Plaintiff's favor at this stage. Even if the purported 2019 disclaimer did exit, there is still a fact

1  issue as to whether Plaintiff and/or reasonable consumers were likely to be deceived despite it. Of

2  course, this is ultimately a *merits* question, not a *standing* inquiry upon.[5]

3          Certainly a jury can decide whether the 2020 label—admitted to not have a disclaimer—

4  was misleading (and unlawful) such that, at most, the claim and proposed class may eventually be

5  divided into subclasses or limited. It is not proper to decide on a jurisdictional basis whether the

6  alleged change in labeling means Plaintiff did not consider the "CARROT CAKE" statement

7  "material" since that too is not an element of standing and only creates a fact issue. *See Falco v.*

8  *Nissan N. Am., Inc.*, 2013 U.S. Dist. LEXIS 147060, at \*15 (C.D. Cal. Oct. 10, 2013) (materiality

9  is separate from injury-in-fact); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010)

10 (materiality is "generally a question of fact unless the fact misrepresented is so obviously

11 unimportant that the jury could not reasonably find that a reasonable man would have been

12 influenced by it.").

13         Finally, Defendants argue a further derivative of their tortured logic as to damages. They

14 contend that, since Plaintiff does not allege she paid more or less between 2019-2020, ipso facto,

15 that must mean there is no loss. *See* MTD at 7. But there is no requirement to plead the amount of

16 a purchase or price premium since that merely goes to a fact issue on the amount of damages,

17 *Hinojos*, 718 F.3d at 1105 *Hanson*, 2020 U.S. Dist. LEXIS 118079 at \*18; nor is it, again, an

18 inevitable conclusion that Plaintiff saw and understood the purported disclaimer in 2019 (if one

19 existed on what she purchased) to conclude as a matter of law she knowingly paid the same for

20 both.

21         **3.      Plaintiff Sufficiently Alleges Standing to Seek an Injunction.**

22         Defendants' last argument in their MTD—that Plaintiff does not have standing to seek

23 injunctive relief—is best addressed here since it is also a jurisdictional contention. Like the

24

25 [5] *See, e.g.*, *Victor v. R.C. Bigelow, Inc.*, 2014 U.S. Dist. LEXIS 34550, at \*18 (N.D. Cal. Mar. 14, 2014) (pleading reliance on a representation is sufficient for standing; the merits are a different

26 issue); *Ogden v. Bumble Bee Foods, LLC*, 2014 U.S. Dist. LEXIS 565, at \*38-39 (N.D. Cal. Jan. 2, 2014) (the "issues are distinct"); *see also Maxwell v. Unilever United States, Inc.*, 2018 U.S.

27 Dist. LEXIS 54222, at \*11 n.1 (N.D. Cal. Mar. 29, 2018) ("reasonable consumer is not a standing

28 issue, but a substantive requirement of UCL, FAL, and CLRA claims").

others, it does not succeed either given Defendants must again characterize the pleadings incorrectly to argue Plaintiff "fails to allege she will suffer a repeated injury" (or an "inadequate legal remedy"). *See* Dkt.# 23 (MTD) at 14-15. The Complaint details how she wants to continue purchasing from Hostess—including carrot cake donuts and *others*—but is unable to rely on the labels unless Defendants are enjoined from being deceptive, *see* Dkt.# 1 (Compl.) ¶ 72, and that there is no adequate remedy at law otherwise. *Id.* ¶¶ 100, 121. Such an allegation satisfies *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966-72 (9th Cir. 2018).[6] That decision held a "previously deceived consumer" can seek an injunction "even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969. Further, it was highlighted in a footnote that the harm does not have to be an exact repeat of the claims. *Id.* at 971 n.9 (requiring only a "sufficiently concrete prospective injury" of any sort).

Plaintiff's allegation here that she desires to purchase the product at issue and others made by Hostess in the future but cannot rely on Defendants' labeling is sufficient to establish standing for an injunction at this stage of the proceedings (i.e., not addressing any merits), regardless if she is now aware of the particular ruse with "CARROT CAKE MINI DONUTS." Defendants have shown a penchant for experimenting with ways to deceive, as seen by the previous ruse regarding "maple glaze" donuts, so there is no reason to suspect they will stop or that Plaintiff cannot be misled in the future by similar artifices absent an injunction to rely upon.

## C. DEFENDANTS' 12(B)(6) CONTENTIONS ARE MERITLESS.

### 1. The "Economic Loss" Doctrine Does Not Apply.

In regard to the Rule 12(b)(6) portion of the MTD, this Court can at the outset summarily reject application of the "economic loss" rule because, as is evident from the pleadings alone, this

---

[6] Defendants' effort at distinguishing *Davidson* on its facts, *see* Dkt.# 23 (MTD) at 15, is not persuasive because the Ninth Circuit did not limit its holding to the facts of that case. Rather, it held more broadly that a consumer may allege future harm sufficient for an injunction by simply being unable to rely on labeling in the future, *Davidson*, 889 F.3d at 969-70, just as Plaintiff does here. Further, subsequent cases like *Joslin* cited by the MTD have been distinguished on the ground that the plaintiff did not want or intend to purchase in the future. *See Vizcarra v. Unilever United States, Inc.*, 2020 U.S. Dist. LEXIS 125649, at *20 (N.D. Cal. July 16, 2020). That is not the case here since Plaintiff alleges wanting to purchase in the future. *See* Dkt.# 1 (Compl.) ¶ 72.

-11-

Pl.'s Opp. to Defs.' Mot. to Dismiss

is not a contract case. The claims are for false advertising, deception, and fraud that induced Plaintiff and other consumers to purchase a food product. Defendants cite no authority that the doctrine has ever barred common law fraud in that context, nor would it make sense for this Court to be the first. *See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1188 (C.D. Cal. 2009) ("The economic loss rule poses no barrier to a properly pled fraudulent inducement claim: It has long been the rule that where a contract is secured by fraudulent representations, the injured party may elect to affirm the contract and sue for fraud."); *see also Arabian v. Organic Candy Factory*, 2018 U.S. Dist. LEXIS 45833, at *22 (C.D. Cal. Mar. 19, 2018) (declining to apply in labeling case).

Defendants merely leverage out-of-context quotes regarding a type of damages that can exist in *either* tort or contract (i.e., loss of money) to suggest that must dictate when the economic loss doctrine applies. That is far from accurate. If only "personal injury or damages to other property" could ever survive the economic loss rule as suggested, *see* Dkt.# 23 (MTD) at 12, then a common law cause of action for fraud or many other torts in California (such as fiduciary breach, conversion, etc.) would all be gutted since they often involve no personal injury or property damages as opposed to a loss of money. In reality, the doctrine only comes into play at all when the *conduct* at issue is governed by both contract and tort, in which case there is an exception for fraud occurring separately from a breach of contract. The *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268 (Cal. 2004), decision relied on by the MTD illustrates that point. It involved a commercial contract for the sale of helicopter parts and, later on, a "fraudulent concealment"[7] regarding parts supplied, which the *Robinson* court ruled could be brought in tort since it was sufficiently independent from the contract. *Id.* at 274.

The other cases cited by the MTD involve omissions as to a *product defect* covered by

---

[7] One case cited by the MTD, *Rattagan v. Uber Techs., Inc.*, 2020 U.S. Dist. LEXIS 150342 (N.D. Cal. Aug. 19, 2020), highlights a distinction between "fraudulent concealment" (sometimes called an omission) arising *after* a contract and inducement. *Id.* at *23-24. The former is subject to economic loss and possible exception under *Robinson* whereas the latter is not. *Id.*

warranty.[8] No such defect or warranty is asserted here, as plainly acknowledged by Defendants in their own briefing. *See, e.g.*, Dkt.# 23 (MTD) at 6 ("[Plaintiff] does not allege that the donettes lacked a carrot-cake taste or flavor, and there is no claim that she (or any other class members) did not enjoy the donettes or find them somehow unacceptable for that reason.").

The whole contention offered is a distraction founded at best on confusion. False advertising claims for conduct that induces a contract (merely an "implied" contract at most here too, since it involves food purchases at retail) are not barred whether based on misrepresentation, omission, deception, or otherwise. Defendants' argument on the economic loss rule should be rejected.

**2.    Grouping the Two Defendants as "Hostess" Is Not Improper.**

The main portions of Defendants' Rule 12(b)(6) motion argue the claims are not pled with "particularity" under Rule 9(b). The purpose of that Federal Rule of Civil Procedure is to be specific about "who, what, when, where, and how" so a defendant can have sufficient notice of what statements to defend against. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Providing such notice in a false advertising case is not particularly hard as the packaging itself along with allegations of when and where a product was purchased satisfies virtually all requirements. *See Ang v. Bimbo Bakeries USA, Inc.*, 2013 U.S. Dist. LEXIS 138897, at *7 (N.D. Cal. Sep. 25, 2013) (surveying authority to deny motion to dismiss finding it not a case "where the plaintiffs failed to identify each product they claimed was mislabeled or attempted to include unspecified misleading language"); *see also Prescott v. Reckitt Benckiser LLC*, 2020 U.S. Dist. LEXIS 227278, at *18 (N.D. Cal. Dec. 3, 2020) (detergent label).

Incredibly, the MTD feebly suggests Defendants do not have enough notice of the "who" in particular to defend against the case since "Hostess" is defined in the Complaint to include both corporate entities – i.e., Hostess Brands, Inc., and Hostess Brands, LLC. *See* Dkt.# 23

---

[8] *See Mosqueda v. Am. Honda Motor Co.*, 443 F. Supp. 3d 1115 (C.D. Cal. 2020) (defective car covered by warranty claims); *In re Ford Motor Co.*, 2020 U.S. Dist. LEXIS 163431 (C.D. Cal. Sep. 2, 2020) (same); *Hammond v. BMW of N. Am., LLC*, 2019 U.S. Dist. LEXIS 113903 (C.D. Cal. June 26, 2019) (same); *Garcia v. GM Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 208129 (E.D. Cal. Dec. 10, 2018) (same).

(MTD) at 8. However, courts find that objection worthwhile only when there are defendants with arguably different conduct. "There is no flaw in a pleading … where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) ("A good claim against one defendant did not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts.")

Here, Plaintiff alleges both Defendants are responsible for the deception with the product's labeling. Beyond their individual contributions, she also alleges each Defendant acted as agents, aiders/abetters, and joint venturers of the other. *See* Dkt.# 1 (Compl.) ¶¶ 11-15. That all can be pled in general since, without discovery, Plaintiff and her counsel cannot be expected to know which entity carried out what specific acts in the process of coming up with or exercising control or approval over the labeling statements and product formulations. *See Haddock v. Countrywide Bank, NA*, 2015 U.S. Dist. LEXIS 146291, at *15 (C.D. Cal. Oct. 27, 2015) (Rule 9(b)'s standards relaxed when information is specially in defendant's knowledge). A collective pleading as to "Hostess" is appropriate as a practical matter given that is the name plastered big across the front of the packaging, *see, e.g.*, Dkt.# 1 (Compl.) ¶¶ 31-32, and not even Defendants' counsel states in his declaration that one of his clients were *solely* responsible to the exclusion of the other for the matters alleged. *See* Dkt.# 23-1; *see also* Dkt.# 23 (MTD) at 1 (using collective defined "Hostess" for MTD). Discovery will reveal if there are any differences at all between the two entities co-located at the same address in Missouri, and it is plausible enough at this point to allege both were responsible.[9]

There is no legitimate objection these particular affiliated Defendants need more specificity either. As one court has noted, the MTD's criticism of collective pleading in circumstances of such obvious control "barely passes the straight face test." *See Grasshopper*

_____

[9] Hostess Brands, Inc.'s 10-K identifies Hostess Brands, LLC as a wholly-owned indirect subsidiary. *See* Exhibit 21.1 to Annual 10-K, dated Feb. 26, 2020, *available at* https://www.sec.gov/Archives/edgar/data/1644406/000164440620000011/a211subsidiariesofther.htm.

-14-

Pl.'s Opp. to Defs.' Mot. to Dismiss

*House, LLC v. Clean & Sober Media, LLC*, 2018 U.S. Dist. LEXIS 228190, at *25 n.4 (C.D. Cal. July 18, 2018).

### 3. Defendants' Rule 9(b) Arguments Merely Identify Various Arguments on the Merits, Not a Failure in Pleading.

Several pages of the Rule 12(b)(6) section of the briefing are thereafter spent arguing against the allegations of how the packaging misleads reasonable consumers. *See* Dkt.# 23 (MTD) at 8-12. Yet, in doing so, Defendants have to rely on thinly-veiled factual disputes, contrary contentions, and inferences that all must be resolved in Plaintiff's favor at this stage of the proceedings.

Specifically, after reciting select aspects of the reasonable consumer standard, Defendants argue Plaintiff does not plead a misrepresentation because: (i) the label "does not constitute … a promise" of real carrot; (ii) it is an "unreasonable assumption" for consumers to expect something called "CARROT CAKE MINI DONUT" to contain <u>carrot</u>; and (iii) it is not reasonable for consumers to look at product images or the food through a transparent film. *See* MTD at 9-10. Those arguments have no merit.

Whether or not Defendants wish to characterize their label as a "promise" is irrelevant; all that matters is whether ordinary consumers were likely to be deceived. The Ninth Circuit starts with a heavy presumption that such a matter "raises questions of fact" not appropriate to resolve on a motion to dismiss, except in "… *rare situations*." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (emphasis added). The MTD does not come close to showing this is one of those rare cases. No authority is cited holding the phrase "CARROT CAKE" or "CARROT CAKE MINI DONUTS" or "CARROT CAKE [anything]" cannot be understood to mean carrot is an ingredient; nor does it pass the basic common sense test. The word carrot is in the name of the product. The fact that all recipes include substantial amounts of real carrot can only bolster that common sense point; as does looking at other carrot cake-labeled products on the market; as do even basic dictionary definitions of the term. *See*, *e.g.*, MERRIAM-WEBSTER ONLINE, "Carrot Cake," *available at* https://www.merriam-webster.com/dictionary/carrot%20cake (defining the term as: "a cake made with shredded carrots in the batter"). Defendants' obstinate denial of the obvious in this regard cannot be more ridiculous. So is their contention that a consumer cannot consider what

a product looks like in a photo put on the label or by seeing it through transparent packaging. *See, e.g.*, Dkt.# 1 (Compl.) ¶¶ 31-32. No extensive narrative allegations are needed for one to gather that Defendants' product is engineered to look like carrot cake; even colored/textured as if to include bits of carrot. *Id.* The images speak for themselves. Defendants' claim that relying on a photograph is "conclusory" has no legal support. Citing language from *Williams* and *Cheslow*[10] is inapposite as well since those cases involved representative images of ingredients (fruits and cookies, respectively) rather than the actual product being sold. This situation is different.

In sum, the phrase "CARROT CAKE MINI DONUTS" is an affirmative statement plausibly alleged to be misleading (and unlawful) since no carrot is in the product. Hardly more than common sense is required to understand "how" that states a claim for deception, yet the Complaint goes into great detail.

Defendants' argument to dismiss an omission claim then falls apart for much the same reason. Indeed, it is explicitly based on a presumption that "Ms. Lauchung-Nacarino has not pleaded any material representations, partial or otherwise, with particularity." *See* Dkt.# 23 (MTD) at 11. When that point collapses under the force of its own faulty premise, as shown above, so does the suggestion that no omission is pled. All the law cited by the MTD then actually *supports* a claim being stated. *Id.* (citing cases that a duty to disclose information exists for partial representations, active concealment, and/or superior knowledge). Put simply, if reasonable consumers plausibly could believe a representation of "CARROT CAKE MINI DONUTS" (with a product engineered to look like carrot cake) to mean the product contains carrot, then the undisputed fact it *does not* lays the primary foundation for an omission claim. The only other thing required is a plausible allegation that Defendants had the requisite knowledge. The Complaint is replete with public information and circumstances to support that conclusion, *see*

---

[10] *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8 (N.D. Cal. 2020), is a continuation of the inapplicable line of *Clark*, *Truxell*, and *Workman* cases cited by the MTD in the Rule 12(b)(1) section. *See*, *supra*, footnote 4. In *Cheslow*, the plaintiffs claimed a label stating "classic white" baking chips misled them into believing it contained white chocolate. *Id.* at 12. The court found that implausible since chocolate or cocoa was not stated anywhere (front or back) on the entire product. *Id.* at 20. Here, the front says "CARROT" with none actually in the product at all.

Compl. ¶¶ 40-51, all of which will only be further supplemented by the process of discovery from Defendants.

Defendants' remaining argument that any consumer deception created by a misrepresentation or omission is "easily dispelled by reviewing the ingredient list" on back, *see* Dkt.# 23 (MTD) at 9, or that the use of artificial flavoring was disclosed "at all times," *id.* at 11, again does not render the claims implausible as a matter of law. The Ninth Circuit has explicitly rejected any contention that consumers must look to an ingredient list on back to dispel deception on the front. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box" and there is no reason to think "the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception"). If the front is misleading to a reasonable consumer—which the allegations in the Complaint permit a plausible inference with or without any of the words of disclaimer offered—then nothing on back matters except to further establish what is conceded already by Defendants: the product did not contain any carrot.

This Court should reject the arguments advanced by the MTD for a Rule 12(b)(6) dismissal because they do nothing more than essentially preview perhaps what Defendants intend to argue on the merits to a jury about what a reasonable consumer should, in their view, understand. The allegations of the Complaint make out a textbook case of deceptive advertising to support causes of action under the CLRA, FAL, UCL, and common law misrepresentation and/or omission.

### D.  PLAINTIFF REQUESTS LEAVE TO AMEND, IF NECESSARY.

If this Court is inclined to grand Defendants' MTD in any aspect, Plaintiff respectfully requests leave to amend her pleading. It is well-established that "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly

-17-

Pl.'s Opp. to Defs.' Mot. to Dismiss

1  denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658

2  (9th Cir. 1992). The live pleading is the original in this suit with no amendments to date.

3  Therefore, if this Court were to find any allegations lacking, Plaintiff requests leave to amend.

4  **IV.    CONCLUSION**

5      For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants'

6  Motion to Dismiss or, in the alternative, grant Plaintiff leave to amend her Complaint.

7  Dated: January 11, 2021                    **GUTRIDE SAFIER LLP**

8                                             /s/Seth A. Safier/s/

9                                           Seth A. Safier, Esq.
Todd Kennedy, Esq.

10                                           100 Pine Street, Suite 1250
San Francisco, CA 94111

Pl.'s Opp. to Defs.' Mot. to Dismiss